**So Ordered.**

*Frederick P. Corbit*

**Frederick P. Corbit**
**Bankruptcy Judge**

**Dated: February 26th, 2014**

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Case No. 13-00933-FPC7 |
| DONALD R. MORRISON and SHERRY A. MORRISON, | **NOT FOR PUBLICATION** |
| Debtors. | |
| DONALD R. MORRISON, | |
| Plaintiff, | Adversary No. 13-80034-FPC |
| vs. | MEMORANDUM DECISION |
| SALLIE MAE, INC., | |
| Defendant, | |
| and | |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | |
| Intervening Defendant. | |

## I.    INTRODUCTION

Donald R. Morrison, the plaintiff, obtained approximately $37,190 of federally insured loans between 1981 and 1989 to fund his education. Mr. Morrison

MEMORANDUM DECISION ~ Page 1

has paid over $50,000 towards the loan balance since. However, due to the accrual of interest at ten percent (10%) per annum and the lack of payment after 2005, the balance grew to approximately $97,000 at the time of trial. Mr. Morrison argues that the full balance of his student loan debt is dischargeable in his chapter 7 bankruptcy proceeding as repaying the loans would cause him undue hardship as defined by 11 U.S.C. § 523(a)(8). Educational Credit Management Corporation ("ECMC"), the intervening defendant and the party authorized to collect on the loans, argues that Mr. Morrison has failed to show that repayment would cause the level of hardship Congress contemplated when drafting 11 U.S.C. § 523(a)(8), and, therefore, the loans are wholly nondischargeable. After considering the law and relevant facts, the court concludes that forcing the plaintiff to repay a large portion of his student loan debt would not subject him to undue hardship. Based on this, the court rules that the plaintiff is granted a discharge of his student loan debt only to the extent it exceeds $72,000.[1]

## II.    FACTUAL AND PROCEDURAL HISTORY

A.    <u>Personal, Professional & Educational History</u>.

Mr. Morrison began his undergraduate education at Seattle University in 1981, leaving after just two quarters. At trial, Mr. Morrison credited severe

---

[1] This Memorandum Decision contains the court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052.

MEMORANDUM DECISION ~ Page 2

depression as the precipitating factor for his early departure from the University. He resumed his education at Spokane Falls Community College where he completed his general studies requirements and obtained an Associate of Arts degree. He continued to pursue an undergraduate degree at Gonzaga University where he received a baccalaureate in History in 1985. Mr. Morrison attended the University of Puget Sound School of Law where he served as Lead Articles Editor on law review and where he ultimately earned a Juris Doctor graduating *magna cum laude* ranking among the top five students in his class.

Upon completion of law school, Mr. Morrison began his legal career with the Seattle firm of Montgomery Purdue Blankinship & Austin, transitioning to the Seattle firm of Lasher Holzapfel Sperry & Ebberson, and finally to the Seattle firm of Mosler Schermer Wallstrom & Seiler before opening his own practice. Mr. Morrison's tenure with each firm was brief – lasting as little as two years and no longer than five. He again attributed this brevity to chronic depression. Mr. Morrison's condition translated into a similar but more conspicuous deficit as a sole practitioner.

Mr. Morrison married Sherry Morrison on May 30, 2000 and, after starting his own legal practice in Seattle in 2005, the two relocated to Spokane in order to care for Mr. Morrison's aging and ailing mother. In an effort to generate income,

Mr. Morrison expanded his practice to Spokane and began commuting between the two cities to attend to his respective clients.

Mr. Morrison testified that in about 2005 he experienced a resurgence of his depression that manifested itself in the neglect of his clients and extra-marital affairs. The negative impact on his personal and professional life created significant marital issues and ultimately led to the suspension of Mr. Morrison's license to practice law. This latter result was the culmination of an investigation conducted by the Washington State Bar Association ("WSBA") due to a multitude of bar grievances filed against Mr. Morrison by his clients. The investigation concluded with Mr. Morrison entering into a stipulation with the WSBA that suspended his license to practice for a period of six months.[2] The stipulation references Mr. Morrison's history of depression as a factor contributing to the conduct underlying the disciplinary action.[3]

Mr. and Mrs. Morrison's domestic relations appear to have improved and the pair continue to reside together in Spokane as a marital community. Mrs. Morrison is employed as a legal assistant at a Spokane law firm and is currently the marital community's primary breadwinner with a net monthly income of approximately $2,455. Mrs. Morrison suffers from rheumatoid arthritis which occasionally

---

[2] The plaintiff's suspension began on June 20, 2012. *See* Pl's Trial Br. 6:3-4 (ECF No. 29).

[3] Pl.'s Ex. D 6:16-21.

interferes with her daily functioning and increases her medical expenses.

Mr. Morrison is 51 years of age and is currently employed as a school bus driver

with a net monthly income of approximately $786.

B.    Student Loan Debt.

During Mr. Morrison's post-secondary education, he incurred approximately

$37,190 of federally guaranteed student loan debt. The original repayment term

spanned 20 years with interest accruing at ten percent (10%) per annum.

Mr. Morrison made an initial payment of $100 on February 8, 1990 and, thereafter,

submitted reasonably consistent payments ranging from a low of $100 to a high of

$1,320 until 2005 when he requested that the servicer place the loan in forbearance

status. Mr. Morrison had paid approximately $50,000 toward the loan, which had a

balance in the neighborhood of $42,000[4] at the time. The lack of payments and

accruing interest between 2005 and the date of trial caused the loan balance to

increase to approximately $97,000.

C.    Procedural Status.

On March 7, 2013, Mr. and Mrs. Morrison filed a joint chapter 7 bankruptcy

petition and received a discharge on June 5, 2013. This discharge did not apply to

Mr. Morrison's student loan debt. On May 8, 2013, Mr. Morrison initiated an

---

[4] *See* Def.'s Trial Br. 3:20-21 (ECF No. 42).

adversary proceeding alleging that his student loans should be discharged. A one-day trial took place on January 16, 2014.

### III.   LAW

Student loans are presumptively nondischargeable in bankruptcy.[5] This presumption may be rebutted by a showing of "undue hardship" on the debtor.[6] The Ninth Circuit has adopted the three part analysis developed by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*[7]  In order to demonstrate "undue hardship" under *Brunner*, the plaintiff must prove that: 1) he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loan; 2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the loan; and 3) he has made good faith efforts to repay the loan.[8]

---

[5] 11 U.S.C. § 523(a)(8).

[6] *Id*.

[7] *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir. 1998) (adopting *Brunner v. N. Y. State Higher Educ. Svcs. Corp. (In re Brunner)*, 831 F.2d 395 (2d Cir. 1987)).

[8] *Id*. at 1111. This court follows the *Brunner* analysis as it is the controlling law in the Ninth Circuit. However, commentators assert that *Brunner* has outlived its utility and has become archaic in its application. *See Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908 (B.A.P. 9th Cir. 2013) (J. Pappas concurring). The test has also been criticized for the impracticality of supplanting a single subjective test with several subjective tests as well as its lack of guidance for applying the undue hardship analysis. *See* Rafael I. Pardo & Michelle R. Lacey, *The Real Student-*

MEMORANDUM DECISION ~ Page 6

The onus lies with the plaintiff to prove each element of the *Brunner* analysis. "If the debtor fails to satisfy any one of these requirements, 'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'"[9]

Finally, should the plaintiff manage to shoulder his burden and prove each element of the *Brunner* analysis, he may not be entitled to a complete discharge of his student loan debt.[10] Thus, if repaying a portion of the student loan debt would not create an undue hardship on the plaintiff that portion of the debt is not dischargeable.[11]

## IV.   ANALYSIS

A.   Prong 1: Present State of Affairs.

The initial prong of the undue hardship analysis under *Brunner* requires the plaintiff to show a present inability to maintain a minimal standard of living if forced to repay his student loan. This portion of the analysis compares the individual's standard of living against his current income and expenses. In evaluating whether

---

*Loan Scandal: Undue Hardship Discharge Litigation*, 83 AM. BANKR. L.J. 179, 199 (2009). As others have suggested, the *Brunner* analysis appears to have preempted the language contained in 11 U.S.C. § 523(a)(8). Judge Easterbrook has stated, "[i]t is important not to allow judicial glosses, such as the language in . . . *Brunner*, to supersede the statute itself." *Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013).

[9] *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1088 (9th Cir. 2001) (quoting *In re Faish*, 72 F.3d 298, 306 (3d Cir. 1995)).

[10] *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1174-75 (9th Cir. 2003).

[11] *Id.*

MEMORANDUM DECISION ~ Page 7

Mr. Morrison has satisfied this prong of the *Brunner* analysis, the court has carefully scrutinized Mr. Morrison's present income and expenses as well as examined his ability to participate in alternative repayment options.

### 1. Expenses.

Prior to trial, Mr. Morrison provided ECMC with a budget that reflects expenses he and his wife have incurred.[12] ECMC does not contest the fact that the Morrisons incurred the expenses, but disagrees that certain items and amounts are reasonably necessary to achieve a minimal standard of living.

To arrive at a budget in order to resolve the initial prong of the *Brunner* analysis, the court began by allowing the uncontested amounts outright and then analyzed the disputed amounts on a line-by-line basis. As the *Pena* court stated, "[t]he method for calculating a debtor's average monthly expenses is a matter properly left to the discretion of the bankruptcy court."[13] The table below lists the uncontested expenses according to ECMC's trial brief and as allowed by the court:[14]

| Expense | Amount |
| --- | --- |
| Bank of America Mortgage | $672.23 |
| Auto Insurance | $126.70 |
| Avista (Utilities) | $150.00 |
| City of Spokane (Utilities) | $115.00 |
| T-Mobile | $110.00 |

[12] *See* Pl.'s Trial Br., Ex. B (ECF No. 29).

[13] *Pena*, 155 F.3d at 1112.

[14] *See* Def.'s Trial Br. 7:5-26 (ECF No. 42).

MEMORANDUM DECISION ~ Page 8

| | |
|---|---|
| Comcast Internet | $47.56 |
| IRS Payment | $100.00 |
| Attorney Fees | $100.00[15] |
| Gasoline | $200.00 |
| Pet Expenses | $50.00 |
| Public Transportation | $45.00 |
| Clothing | $50.00 |
| AAA/Tabs/Emissions | $48.54 |
| Subtotal | $1,815.03 |

ECMC disputes each proposed expense not listed above. In resolving the disputes, the court found that the IRS Collection Financial Standards was a useful reference in this particular case.[16]

For each disputed line item in the budget, the court made the appropriate comparisons and accepted either the plaintiff's proposal or the defendant's proposal. The following table sets forth Mr. Morrison's proposed amounts in the second column and ECMC's proposed amounts in the third. The final column contains those amounts the court finds reasonably necessary for Mr. and Mrs. Morrison to maintain a minimal standard of living.

---

[15] The plaintiff stated at trial that he believed this item is to be a post-petition debt not included in his bankruptcy discharge. ECMC did not question this statement or otherwise address the issue.

[16] The "minimal standard of living" criterion under the *Brunner* analysis is distinct from the IRS Collection Financial Standards. The IRS uses its Collection Financial Standards to determine the "expenses necessary for a taxpayer's (and his or her family's) health and welfare." *See* Collection Financial Standards, http://www.irs.gov/Individuals/Collection-Financial-Standards (last visited Feb. 24, 2014).

| Expense | Plaintiff's Proposal | Defendant's Proposal | Allowed |
|---|---|---|---|
| Junior Mortgage | $400.00 | $140.81 | $327.77[17] |
| Netflix | $8.69 | $0 | $8.69 |
| Spotify | $10.87 | $0 | $10.87 |
| Dollar Shave | $6.00 | $0 | $6.00 |
| Big Oven | $1.99 | $0 | $1.99 |
| Medications | $112.00 | $109.83 | $112.00 |
| Doctor Bills | $200.00 | $0 | $200.00 |
| Food | $600.00 | $150.60 | $556.00 |
| Books/magazines | $50.00 | $0 | $50.00 |
| Car Repairs | $165.00 | $50.00 | $50.00 |
| Home Repairs | $160.00 | $100.00 | $100.00 |
| II's Health Ins. | $350.00 | $0 | $0 |
| II's Retirement | $300.00 | $0 | $0 |
| Subtotal | | | $1,423.32 |
| Total | | | $3,238.35[18] |

2.  <u>Income</u>.

Progressing through the analysis, the court notes the uncontested net monthly income earned by Mr. and Mrs. Morrison are $786.19 and $2,455.04 respectively. The court also notes that Mr. Morrison receives distributions of $2,000 from a family trust every four months. While Mr. Morrison wishes to exclude these funds from consideration based on the discretionary nature of the distributions, the first

[17] The court allowed the monthly allocation for the junior mortgage at this amount as the total amount for both mortgages is capped at $1,000 which equals the undisputed amount that Mrs. Morrison testified would be reasonable for rent.

[18] The Morrisons' actual monthly expenses might be higher. Mrs. Morrison testified that some expenses, such as haircuts at $25 monthly, were inadvertently omitted from the proposed budget. However, the court calculated the budget on the evidence present at trial.

MEMORANDUM DECISION ~ Page 10

prong of the *Brunner* analysis requires the court to examine a plaintiff's *current* income and expenses. As such, the court cannot exclude the trust income in its analysis. Adding the trust distributions at $500 monthly, the Morrisons' net monthly income rises to $3,741.23. Subtracting the Morrisons' monthly expenses of $3,238.35 from their net monthly income leaves monthly disposable income of $502.88.

Accordingly, the court finds that Mr. and Mrs. Morrison must expend $3,238.35 each month in order to maintain a minimal standard of living, and that their income exceeds this standard by $502.88. However, $502.88 per month is not sufficient to repay Mr. Morrison's student loans as they currently accrue interest of approximately $808 each month.

### 3. Income based repayment.

Congress authorized what it describes as the Income Based Repayment Plan ("IBR")[19] as an alternative repayment option for student loan borrowers. According to the testimony of an ECMC employee, Ms. Julie Swedback, the calculation of a borrower's monthly student loan payment under the IBR does not account for the total balance of his or her loan. Rather, the payment amount is a function of a borrower's family size with respect to 150 percent (150%) of the poverty level and compared to the borrower's adjusted gross income as reported on his or her prior

---

[19] 20 U.S.C. § 1098E(b).

MEMORANDUM DECISION ~ Page 11

year federal income tax return. Roughly, a borrower must pay 15 percent (15%) of any income exceeding the difference between his or her adjusted gross income and 150 percent (150%) of the poverty level. If a borrower chooses to participate in the IBR, any balance remaining after 25 years is forgiven. Ms. Swedback further testified that Mr. Morrison's current monthly IBR payment would be $273 per month if he chose to participate in the program ($0 if he and his wife file separate tax returns).

ECMC's urges the court to use Mr. Morrison's monthly IBR payment to determine prong one, alleging that a court must use a borrower's "most affordable payment option" to determine whether the borrower is able to maintain a minimal standard of living if forced to repay the loan.[20] ECMC's argument is flawed as it would lead to an outcome inconsistent with the *Brunner* analysis. By the very nature of bankruptcy, the majority of debtors will have a nominal IBR payment. Thus, using the monthly IBR amount would dictate the outcome of prong one and would render an absurd result – the more destitute the debtor the less likely the discharge.[21]

If Congress had intended that bankruptcy courts employ the IBR in the manner that ECMC suggests, and thereby permitted the underlying statute to

---

[20] *See* Def.'s Trial Br. 13:19–15:11 (ECF No. 42).

[21] This result is underscored by the fact that Mr. Morrison would be required to pay $0 monthly if he and his wife filed separate federal income tax returns.

MEMORANDUM DECISION ~ Page 12

abrogate judicial discretion in connection with the hardship analysis under 11 U.S.C. § 523(a)(8), it could have explicitly said so. Absent any such express congressional intent to support ECMC's position, this court rejects ECMC's argument that Mr. Morrison's ability to pay the IBR amount translates into an inability to satisfy prong one of the *Brunner* analysis.[22]

### 4. Prong 1 conclusion.

The court finds that based on Mr. Morrison's current income and expenses he cannot maintain a minimal standard of living if forced to pay more than $502.88 per month on his student loans. Moreover, the court concludes that Mr. Morrison's ability to make an IBR payment does not mean that he has failed to satisfy the first prong of the *Brunner* analysis. Therefore, the court concludes that Mr. Morrison has satisfied the first prong of the *Brunner* analysis.

### B. Prong 2: Future State of Affairs.

Courts have referred to the second prong of the *Brunner* analysis as the "additional circumstances" test.[23] This prong contains two separate but related elements: First, a plaintiff is required to demonstrate that additional circumstances exist demonstrating that the conditions satisfied in the initial prong are likely to

---

[22] This court has previously decided this issue in similar fashion and on similar grounds. *Booth v. U.S. Dep't of Educ. (In re Booth)*, 410 B.R. 672 (Bankr. E.D. Wash. 2009).

[23] 4 Collier on Bankruptcy ¶ 523.14[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

MEMORANDUM DECISION ~ Page 13

continue.[24] The second element requires a plaintiff to demonstrate that these circumstances will continue for a "significant portion of the repayment period."[25]

1. Expected future income.

At trial, both parties presented evidence that the plaintiff's income is likely to increase. Mr. Morrison testified that he is currently employed on a part-time basis and is looking for more lucrative full-time employment. ECMC's expert witness, Trevor Duncan, postulates that within a few years, Mr. Morrison's annual income could be in the range of $26,400 and be as high as $56,800 even if Mr. Morrison did not return to the practice of law.[26] The court agrees that Mr. Morrison's current income does not match his potential and is likely to increase. However, for reasons not considered by Mr. Duncan, the court finds that Mr. Morrison is not likely to sustain the increases Mr. Duncan predicts. Mr. Duncan testified that he reviewed the contents of Mr. Morrison's resume, interrogatory answers, and deposition transcript in arriving at his assessment, but did not review the stipulation related to Mr. Morrison's suspension – a document both parties agreed to present as evidence. The stipulation states in relevant part that "[t]hroughout his life, Respondent [Mr. Morrison] suffered from depression" and that this depression manifested itself

---

[24] *Id.*

[25] *Id.*

[26] *See* Def.'s Ex. 1.

MEMORANDUM DECISION ~ Page 14

in ways that "impacted his practice of law."[27] Because Mr. Duncan failed to consider the contents of the stipulation, the court finds that he did not fully account for the toll that depression takes on Mr. Morrison's ability to maintain employment.

### 2. Prong 2 conclusion.

Mr. Morrison has shown that his chronic depression limits his ability to repay the loan and that his condition is likely to persist for a significant portion of the repayment period.[28] Therefore, taking into account all relevant facts, the court concludes that Mr. Morrison has satisfied the second prong of the *Brunner* analysis.

### C. Prong 3: Good Faith.

The good faith prong of the undue hardship test focuses on two factors: "the debtor's efforts (1) to obtain employment, maximize income and minimize expenses, and (2) to negotiate a repayment plan."[29]

---

[27] Pl.'s Ex. D 6:16-19.

[28] The plaintiff need not present expert evidence to support the contention that his mental health issues limit his earning potential or that his condition is persistent. *See Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley), 494 F.3d 1320 (11th Cir. 2007); Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett), 487 F.3d 353 (6th Cir. 2007); Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful), 267 F.3d 324 (3d Cir. 2001).*

[29] *Mason v. Educ. Credit Mgmt. Corp. (In re Mason)*, 315 B.R. 554, 563 (B.A.P. 9th Cir. 2004). *See also Birrane v. Pa. Higher Educ. Assistance Agency (In re Birrane)*, 287 B.R. 490, 499-500 (B.A.P. 9th Cir. 2002).

1        1.  <u>Efforts to obtain employment, maximize income, and minimize</u>

2  <u>expenses</u>.

3        The court reemphasizes that Mr. Morrison's current earnings fall short of his

4  potential. However, the court also notes that Mr. Morrison and the WSBA recently

5  stipulated to the suspension of Mr. Morrison's license to practice law.[30] While

6  ECMC points out that Mr. Morrison voluntarily agreed to the suspension,[31] the court

7  concludes that the risk of stiffer penalties warrants Mr. Morrison's compliance.

8        The court also recognizes that Mr. Morrison's decision to abstain from the

9  practice of law does not indicate a lack of good faith. According to the stipulation,

10  Mr. Morrison must satisfy several requirements prior to the reinstatement of his

11  license. This process necessarily involves an investment of time and money,[32] but

12  leaves reinstatement to the discretion of the WSBA. Thus, the outcome is uncertain

13  and there is no assurance that the potential benefits would justify the costs.

14  Additionally, in the event that Mr. Morrison could succeed in regaining his law

15  license, his history indicates that his return to the practice of law could prove

16  adverse to himself and possibly his clients.

17

18  ───────────────

19  [30] Pl.'s Ex. D.

   [31] Def.'s Trial Br. 4:8 (ECF No. 42).

20  [32] *See* Pl.'s Ex. D. 20:15-22:8 ("Stipulated Discipline and Conditions to Reinstatement").


MEMORANDUM DECISION ~ Page 16

A second factor supporting Mr. Morrison's good faith is the temporal proximity of the suspension date and the trial date. As Mr. Morrison and the WSBA only recently stipulated to his suspension, Mr. Morrison has not had sufficient time to fully rebound and realize his full earning potential.[33] Mr. Morrison testified that he has sought more lucrative employment and that he intends to continue this pursuit. While he has not yet realized his goal, there is no reason to believe he will not succeed. Mr. Morrison's commitment to generating income is objectively supported by his willingness to work as a school bus driver. Many similarly educated individuals would not consider such an option viable. While Mr. Morrison's income is currently depressed, it has not been so for an unreasonable period of time.

A third factor supporting Mr. Morrison's good faith is his payment history. Mr. Morrison submitted reasonably consistent payments spanning from the beginning of 1990 to early 2005.[34] The total amount Mr. Morrison paid toward his student loan balance exceeds $50,000 on an original balance of approximately $37,190. This evidence demonstrates that during the time of Mr. Morrison's highest

---

[33] ECMC's expert witness speculates that a successful job search can endure for an extended period of time. He says, "[i]n the economy today, it is not unreasonable for many to continue to search for better employment for a year or more." Def.'s Ex. 1 p. 2.

[34] *See* Pl.'s Trial Br., Ex. A (ECF No. 29).

MEMORANDUM DECISION ~ Page 17

earnings he made substantial payments toward his student loan debt. Over a decade and a half of repayment is a strong indication of good faith.

Finally, the court emphasizes that Mr. Morrison has recently undergone trying personal issues including the care of his ailing mother, domestic issues, and the circumstances surrounding his recent suspension. The court need not refer to expert testimony to note that life changing events often cause disruptions of varying interval and degree. Nor does the court find it unreasonable to account for such factors when determining whether a plaintiff has acted in good faith.

### 2. Plaintiff's efforts to minimize expenses.

ECMC argues that several of the expenses incurred by Mr. and Mrs. Morrison exceed those reasonably necessary to maintain a minimal standard of living. While the court has excluded several of Mr. Morrison's proposed expenses, the court finds that the couple lives a modest lifestyle[35] and enjoy few, if any, indulgences.

In an attempt to illustrate a lack of good faith, ECMC provided evidence detailing Mr. and Mrs. Morrison's vacations. These retreats included a trip to Seattle for a multi-day opera and travel to the East Coast. While such undertakings may appear extravagant at first blush, the actual cost of Mr. and Mrs. Morrison's travels is negligible when considering that their trips were infrequent and without frill.

---

[35] For example, Mrs. Morrison testified that she shopped at Goodwill to purchase clothing for work.

MEMORANDUM DECISION ~ Page 18

Mrs. Morrison testified that their airfare for the East Coast trip was a gift, that they stayed either with friends or at campgrounds while vacationing, and that they cooked the majority of their meals.

The court deems it worth mentioning that Mrs. Morrison's full-time employment is currently responsible for Mr. Morrison's ability to submit payments towards a student loan debt that is his separate liability. In light of this, the court finds denying Mrs. Morrison the occasional excursion is an unnecessarily harsh result.

More troubling than the relatively minor travel costs, are the expenses Mr. Morrison incurred in connection with extra-marital affairs. While these expenditures tend to weigh against Mr. Morrison, they are insignificant when compared to the overall student loan balance and would have made a minimal impact if applied to Mr. Morrison's student loan debt. Weighing in favor of Mr. Morrison is the fact that he sought counseling to avoid further marital discord and misallocation of resources. Recognizing the relatively small costs and Mr. Morrison's preventative efforts, the court does not conclude that the costs associated with the extra-marital affairs indicate a lack of good faith.

3.     <u>Efforts to negotiate repayment options</u>.

As demonstrated from exhibits admitted at trial, Mr. Morrison considered but ultimately rejected the IBR.[36] After so concluding, Mr. Morrison proposed a repayment schedule amounting to a significantly abbreviated version of the IBR.[37] The terms of the proposal included calculating the IBR payment based on his income alone and substantially reducing the IBR period to seven years. Although the proposal amounts to a current monthly payment of $0, the court does not conclude that Mr. Morrison's proposal was disingenuous. Rather Mr. Morrison has demonstrated a sincere intent to increase his income, which, in turn, would increase his monthly IBR payment.

4.     <u>Prong 3 conclusion</u>.

After reviewing Mr. Morrison's efforts to maximize income, minimize expenses, and negotiate repayment options, the court finds that Mr. Morrison has

---

[36] The plaintiff asserted at trial that one reason for rejecting the IBR is a potentially significant tax liability. The court does not comment on the tax issue other than to point out that Mr. Morrison's concern about a potential liability is an appropriate factor for the court to consider in connection with determining whether Mr. Morrison has acted in good faith. *See Biranne*, 287 B.R. at 500; *Roth*, 490 B.R. at 923; *Lee v. Regions Bank Student Loans (In re Lee)*, 352 B.R. 91, 97 (B.A.P. 8th Cir. 2006); *Wolfe v. U.S. Dep't of Educ. (In re Wolfe)*, 501 B.R. 426, 435 (Bankr. M.D. Fla. 2013).

[37] *See* Pl.'s Ex. O.

made good faith efforts to repay his student loans. Therefore, Mr. Morrison has satisfied the third prong of the *Brunner* analysis.[38]

D.    *Saxman*: Partial Discharge.

Satisfying the three prongs of the *Brunner* test does not conclude the analysis. The undue hardship analysis is not an all-or-nothing test in the Ninth Circuit. In this circuit, a plaintiff remains obligated to repay any portion of a student loan debt that does not impose an undue hardship.[39] Since Mr. Morrison is able to repay some portion of his student loans without exposing himself to undue hardship, that portion is not dischargeable.

Projecting what Mr. Morrison can earn over the next two decades requires the court to engage in speculation. However, the *Brunner* analysis mandates such predictive fact finding. Based on the evidence presented, the court finds that Mr. Morrison is able to pay: (1) $503 per month during the next 18 months;[40]

---

[38] The alternatives to the IBR option that ECMC indicate are available to Mr. Morrison require a monthly payment exceeding Mr. Morrison's current monthly disposable income and are therefore not viable.

[39] *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1175 (9th Cir. 2003).

[40] *See* Section IV.A.2 *supra*.

(2) $700 per month during the following 18 months;[41] and (3) $833 per month until Mr. Morrison reaches retirement age in approximately 16 years.[42]

The court arrived at the initial payment amount by carefully scrutinizing each item contained in Mr. Morrison's proposed budget in order to determine his present ability to pay. The court arrived at the second and third payment amounts by evaluating the relevant facts to project the probable dates and amounts of Mr. Morrison's future increases in income. While the graduated payments may not appear substantial, the court predicts that Mr. and Mrs. Morrison's expenses will also increase over time.[43] For example, as the Morrisons age, it is expected that their medical expenses will increase, especially in light of Mrs. Morrison's relatively costly medical condition.

Finally, according to the Social Security Administration, Mr. Morrison will reach full retirement age on his 67th birthday.[44] Given that Mr. Morrison will be 67

---

[41] The plaintiff's current budget includes $100 monthly payments towards a total debt of $1,800 for legal fees. Pl.'s Ex. R. Thus in 18 months, the plaintiff will be able to allocate this $100 to his student loan debt. Additionally, during this initial 18 months it is expected that the plaintiff will also be able to obtain better employment.

[42] The plaintiff has budgeted $100 monthly for payment towards federal income taxes on a total debt of $3,500. *Id.* Timely payment of this obligation will allow the plaintiff to allocate another $100 towards his student loan. Additionally, the court believes that the plaintiff will continue to increase his income during the second 18 month period.

[43] It is also possible that the trust distributions Mr. Morrison receives can cease at any point.

[44] Retirement Planner: Full Retirement Age, http://www.ssa.gov/retire2/retirechart.htm (last visited Feb. 24, 2014).

years of age in about 16 years, the court concludes that it would impose an undue hardship on Mr. Morrison if he remained obligated on his student loans well into his senior years. Based on the payment schedule referenced above, a principal balance of $72,000, accruing interest at ten percent (10%) per annum amortizes over approximately 16 years. For the reasons already stated, the court concludes that repaying any amount above $72,000 would impose an undue hardship on Mr. Morrison under the *Brunner* analysis.[45]

## V.    CONCLUSION

Mr. Morrison has satisfied the tripartite *Brunner* analysis. First, the court finds that, if forced to repay the loan, Mr. Morrison's current income and expenses do not support a minimal standard of living. Second, the court finds additional circumstances indicate that Mr. Morrison's inability to repay his full loan balance will persist for an extended period. Finally, the court finds that Mr. Morrison has made good faith efforts to repay his student loan debt. Nonetheless, Mr. Morrison is not entitled to a full discharge of his student loan obligation as the court also finds that he is able to repay a large portion of the debt without enduring undue hardship.

---

[45] Reducing Mr. Morrison's debt to $72,000 does not relieve Mr. Morrison from a lion's share of the debt. Nevertheless, the court's ruling does not preclude Mr. Morrison from participating in the IBR. At trial, ECMC acknowledged that the IBR will remain an option for Mr. Morrison.

MEMORANDUM DECISION ~ Page 23

1   The court concludes that $72,000 of the student loan debt is not dischargeable but

2   that any amount in excess of $72,000 is discharged.

3                        /// END OF MEMORANDUM DECISION///

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20